152 P.3d 622

STATE of Idaho, Plaintiff–Respondent,

v.

Frank A. GAMMA, Penny J. Nygaard, Henry E. Kulczyk, Mardi A. Kline, Archie Sanchez, Robert Weisel, Lennette L. Jackson, and Gloria J. Pfost, Defendants–Appellants.

Nos. 32300, 32303, 32304, 32305, 32306, 32307, 32308, 32309.

Court of Appeals of Idaho.

July 14, 2006.

Review Denied Feb. 26, 2007.

Nelson Law Office, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Frank A. Gamma, Penny J. Nygaard, Henry E. Kulczyk, Mardi A. Kline, Archie Sanchez, Robert Weisel, Lennette L. Jackson, and Gloria J. Pfost, hereinafter collectively referred to as the appellants, appeal from the district court's order on intermediate appeal from the magistrate division, affirming their judgments of conviction for resisting and obstructing an officer. We affirm.

## I.

### FACTS AND PROCEDURE

The city of Boise planned to remove a 2700 pound monument of the Ten Commandments from a public park and place it on private property belonging to a church. The appellants opposed the monument's removal and informed the city of their belief that the city's plan to place the monument on private church property without the city receiving compensation violated Article XII, Section 4 of the Idaho Constitution and the Establishment Clause of the First Amendment to the United States Constitution. The appellants also asserted that the city's plan contravened the provisions of the Boise Municipal Code (B.M.C.) relating to disposal of city property.

The appellants were unsuccessful in their attempts to dissuade the city from its plan for the monument and were unable to obtain a temporary restraining order prohibiting the city from removing the monument from the park. On the day of the monument's removal, the appellants and a number of other demonstrators were permitted within the section of the park surrounding the monument to publicly protest its removal. When equipment arrived to remove the monument, a police officer informed the appellants that the park director had closed the section of the park surrounding the monument and the section would be reopened after the monument's removal. The officer instructed the demonstrators to move to an adjacent section of the park, which was designated for the demonstrators to continue their protest after the arrival of the equipment. The officer informed the demonstrators that failure to comply could result in their arrest. The majority of the demonstrators moved into the designated area, but the appellants remained in the closed section of the park. The officer twice more directed the appellants to leave the closed section, and the appellants did not comply. The appellants were then arrested and charged with resisting and obstructing an officer. I.C. § 18–705.

The appellants filed motions to dismiss alleging that, because the city's plan regarding the monument violated provisions of the state and federal constitutions and the B.M.C., the park director could not legally close the section of the park surrounding the monument to facilitate its safe removal. The appellants contended that, therefore, the officer's order for the appellants to leave the closed section of the park was unlawful and they were entitled to obstruct the monument's removal. The state responded that, regardless of the legality of the city's plan, the park director had the authority to close the section of the park surrounding the monument, the police were authorized to enforce that closure, and the appellants' refusals to leave the closed section obstructed the officer in the performance of her duty. The magistrate denied the appellants' motions to dismiss.

At trial, the park director testified regarding his authority to close city parks. The park director indicated that he decided to close the section of the park surrounding the monument during its removal because, given the nature of equipment needed to remove an object as large as the monument, anyone in proximity would be in danger during the removal process. The police officer, who was responsible for organizing the police presence in the park on the day of the monument's removal, testified regarding discussions held with the appellants prior to the monument's removal. The organizing officer also testified that law enforcement's objectives that day included maintaining law and order while facilitating the public demonstration in protest of the monument's removal. Additionally, the police officer who ordered the appellants to leave the closed section testified that she had a duty to enforce the park closure and to protect the public's safety by ensuring no one was in the vicinity of the removal equipment.

Following presentation of the state's case, the appellants moved for a judgment of acquittal. The appellants alleged that the state had failed to prove that the officer, who the state contended the appellants had obstructed, had a duty to close the park or remove the monument. The appellants thus contended that the state failed to prove that their failure to leave the closed section obstructed the performance of the officer's duty. The magistrate denied the appellants'

motions. The jury found the appellants guilty of resisting and obstructing an officer. The appellants appealed to the district court, which affirmed the judgments of conviction. The appellants again appeal.

## II.

## ANALYSIS

■ On appeal, the appellants assert that they were entitled to prevent the city from executing its plan to remove the monument and that the officer was not performing a lawful duty when she ordered them to leave the closed section of the park. The appellants also contend that the jury instructions misstated the law and that the state did not introduce sufficient evidence to sustain the jury's findings of guilt. On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App. 1993).

### A. Resistance

Initially, we address the appellants' contentions that they were entitled to remain within the closed section of the park to prevent the city from committing a crime by removing the monument. A person may offer sufficient resistance to prevent an offense against his or her person or family member, to prevent an illegal attempt by force to take or injure property in his or her lawful possession, or to prevent an offense against a person about to be injured. I.C. §§ 19–202, 19–203. A person is also entitled to use any means necessary to protect another whom he or she believes is in imminent danger of or the victim of aggravated assault, robbery, rape murder, or other heinous crime. I.C. § 19–202A.

■ The appellants do not contend that they were entitled to possess the monument and, in fact, assert that it was city property. The appellants instead dispute the city's decision to move the monument to private property without the city receiving compensation and the city's failure to provide the appel-

lants with the opportunity to purchase the monument by placing it for sale at a public auction. The city's conduct in removing the monument did not approximate an imminent threat of personal injury, robbery, or other crime specified in Sections 19–202, 19–202A, and 19–203. Even if we assume that the city violated the various constitutional and municipal provisions cited by the appellants, the monument's removal was not a criminal offense which the appellants were entitled to prevent by committing the separate offense of resisting and obstructing an officer. Accordingly, we conclude this argument to be without merit.

### B. Lawful Duty

■ We next address the appellants' arguments that they were entitled to obstruct the officer because she was not carrying out a lawful duty when she ordered them to leave the closed section of the park. Idaho Code Section 18–705 provides:

Every person who wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office ... is punishable by a fine not exceeding [$1,000], and imprisonment in the county jail not exceeding [one] year.

The word "duty," as used in this statute, encompasses only lawful and authorized acts of a public officer. *State v. Hollon*, 136 Idaho 499, 502, 36 P.3d 1287, 1290 (Ct.App. 2001); *State v. Wilkerson*, 114 Idaho 174, 180, 755 P.2d 471, 477 (Ct.App.1988). Consequently, where an individual refuses to obey an order or peacefully obstructs an act of a public officer that is contrary to the law, be it statute or constitution, that individual does not violate Section 18–705. *State v. Hallenbeck*, 141 Idaho 596, 599, 114 P.3d 154, 157 (Ct.App.2005); *State v. Wiedenheft*, 136 Idaho 14, 16, 27 P.3d 873, 875 (Ct.App.2001). The duties of a police officer are many and varied. *Wilkerson*, 114 Idaho at 179, 755 P.2d at 476. In determining what constitutes a duty, we explore the difficult, dangerous, and subtle field where the essential office of the police impinges on the basic freedom of the citizen. *Hallenbeck*, 141 Idaho at 599, 114 P.3d at 157.

Relying on this Court's decision in *Wilkerson*, the appellants contend that their attempts to prevent the monument's unlawful removal constituted protected conduct for which they could not be punished. In *Wilkerson*, an officer had requested that a vehicle, owned by the defendant's son, be towed. The defendant challenged the officer's authority to have the vehicle towed and told the officer that she had called a tow truck to have the vehicle towed to her residence. The officer informed the defendant that the vehicle would be impounded. After the tow truck called by the officer arrived, the defendant obstructed the tow truck operator from hooking up the vehicle and was arrested for resisting and obstructing an officer. At trial, the defendant contended that the officer had not followed the statute, which governed an officer's authority to order a vehicle towed over the owner's wishes. The defendant requested a jury instruction indicating that, if the jury concluded the officer had not followed the statute, the jury must conclude that the officer was acting outside the scope of his duty and that the defendant was not guilty of resisting and obstructing an officer. The trial court indicated that the lawfulness of the officer's conduct was immaterial and refused to give the defendant's instruction.

On appeal, this Court held that to interpret "duty" as encompassing acts other than those that are lawful and authorized would clothe an officer with protection from resistance based only on his or her status as an officer. *Wilkerson*, 114 Idaho at 180, 755 P.2d at 477. Such an interpretation would render the statutory language "in the discharge, or attempt to discharge, of a duty of [his or her] office" mere surplusage. *Id.* Accordingly, this Court determined the defendant was entitled to a new trial, in which the jury would be instructed regarding the scope of the police officer's duty. *Id.*

The state asserts that, regardless of whether the city's decision to move the monument to private property was lawful, the municipal code authorized the officer to enforce the park's closure. The park director may close any section of any park, either temporarily or at regularly and stated intervals and either entirely or merely to certain uses, as the director shall find reasonably necessary. B.M.C. § 9–14–08. The code prohibits any person from going into permanently or temporarily restricted areas. B.M.C. § 9–14–02. Police officers are authorized to enforce the provisions of the municipal code. B.M.C. § 9–14–09.

■ Notwithstanding these provisions of the municipal code, the appellants assert that, if the city's plan for the monument violated the law, the officer was not performing an authorized duty by instructing the appellants to leave the closed section of the park. However, the acts of the park director in closing the section of the park and the officer in effectuating that closure were specifically authorized by law. The legality of the city policy makers' decision, which gave rise to the reason for the park closure, affected neither the legality of the closure order itself nor the officer's actions in effectuating the closure.

Further, this case can be distinguished from *Wright v. Georgia*, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963), which the appellants also assert supports their position. In *Wright*, the defendants, who were African–American, were arrested for breach of the peace after they failed to leave a park when ordered to do so by police. The officers' commands for the defendants to leave the park was based on the intention to enforce racial discrimination in the park, which violated the defendants' rights to equal protection pursuant to the Fourteenth Amendment. *Wright*, 373 U.S. at 292, 83 S.Ct. at 1245, 10 L.Ed.2d at 355. Because the officers' commands violated the defendants' constitutional rights, the defendants could not be punished for failing to obey the commands. *Id.* at 291–92, 83 S.Ct. at 1245, 10 L.Ed.2d at 354–55. Similarly, other cases in which Idaho appellate courts have addressed the scope of an officer's duty for purposes of Section 18–705 have considered whether the officer's order, which the defendant resisted or obstructed, violated the defendant's right to be free from unreasonable searches and seizures. *See State v. George*, 127 Idaho 693, 699, 905 P.2d 626, 632 (1995) (because the traffic stop did not violate defendant's right to be free from unreasonable searches and

seizures, the defendant obstructed the authorized duty of the officer by refusing to provide her driver's license); *Wiedenheft*, 136 Idaho at 15–16, 27 P.3d at 874–75 (whether defendant was entitled to obstruct the officer's warrantless entry into her home depended on whether the exigent circumstances exception to the warrant requirement applied).

Here, although the appellants allege the city's *plan* for the monument violated the law, they have failed to allege how closure of a section of the park and the requirement that they conduct their protest at a safe location outside the closed section violated their rights to due process, rights to be free from unreasonable searches or seizures, or other constitutionally or statutorily protected rights.[1] We believe this case is akin to *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), which involved the defendant's arrest for disorderly conduct after he refused to leave the scene of a traffic stop. In *Colten*, the defendant noticed a police officer pull over an acquaintance's vehicle. The defendant stopped his vehicle and approached the officer to ascertain the reason the acquaintance was stopped. The officer informed the defendant that he was issuing a summons to the acquaintance for driving with an expired license plate. The defendant disputed whether the acquaintance should be cited for having an expired license plate and, in the event the vehicle was towed, wanted to offer transportation to the vehicle's occupants. The defendant ignored the police officer's commands to leave the scene of the traffic stop and was arrested and charged with disorderly conduct. In upholding the defendant's judgment of conviction, the United States Supreme Court rejected the defendant's contention that he was engaged in activity protected by the First Amendment at the time of his arrest. *See Colten*, 407 U.S. at 109, 92 S.Ct. at 1956–57, 32 L.Ed.2d at 589. Rather, the state had a legitimate interest in enforcing its traffic laws, and its officers were entitled to enforce those laws free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction. *Id.* The Court thus concluded that the defendant had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation after being told to leave. *Id.*

Similarly, the appellants here have not demonstrated that they had a protected right to obstruct the city from disposing of its property in an allegedly unlawful manner. We refuse to expand *Wilkerson* to vest the public with the authority to obstruct the acts of public officials, which neither constitute a crime nor affect the personal rights of those causing the obstruction. The appellants were obligated to confine their attempts to resolve their dispute with the city to sanctioned methods such as publicly protesting the monument's removal in the designated area and seeking relief through the judicial, executive, and legislative branches of the state and federal government. Accordingly, even if we assume that the city violated the constitutional and municipal provisions cited by the appellants, they have failed to show that their refusal to leave the closed section of the park was protected conduct for which they could not be punished.

## C. Jury Instruction

The appellants further argue that the jury instruction given in this case, which told the jury that it was the specific act being performed at the time and place alleged in the complaint that should be considered in determining whether the officer's duty was authorized, was contrary to this Court's holding in *Wilkerson*.[2] The appellants contend that the police had no duty to close the park or remove the monument and that the jury instruction improperly focused the jury's at-

---

1. Although the appellants characterize their presence in the closed section of the park as a "peaceful protest," they contend neither that the park closure violated their right to free speech nor that requiring the appellants to continue their demonstration in the adjacent area was not a reasonable time, place, and manner restriction.

2. In this case, jury instruction No. 19 provided:

   In considering whether a public officer's duty was "lawful and authorized," it is the specific act that was being performed at the time and place alleged in the complaint that should be considered.

tention on the officer's command for the appellants to leave the closed section instead of the absence of legal authorization for the monument's removal.

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App. 1993). In *Wilkerson,* this Court did not mandate any specific instruction and, instead, directed the trial court to grant the defendant a new trial and to properly instruct the jury on the scope of the officer's duty. The defendant was found guilty following the new trial and again on appeal argued that the jury instructions were erroneous. *See State v. Wilkerson,* 121 Idaho 345, 824 P.2d 920 (Ct.App.1992). This Court concluded the instructions conveyed to the jury that, if the officer impounded the vehicle under color of the motor vehicle statutes but the vehicle was not abandoned, stolen or found under extraordinary circumstances as defined by those statutes, the officer acted beyond his statutory duty. *Id.,* at 349, 824 P.2d at 924.

In this case, in addition to the jury instruction complained of by the appellants, the jury was instructed that it was the duty of the police to enforce the provisions of the city code. The jury was also instructed that the government cannot prohibit or abridge the right of the people to peacefully assemble and to petition the government for a redress of grievances. Additionally, the jury was instructed that the word "duty" included only the lawful and authorized acts of a public officer.

The state alleged that the appellants violated Section 18–705 by failing to follow the officer's order to leave the closed section of the park. Thus, the relevant inquiry was whether the specific act of the officer, whom the appellants were accused of obstructing, was lawful and authorized. Further, the jury instructions, taken as a whole, communicated to the jury that, if the officer ordered the appellants to leave the closed section

under color of her authority to enforce the city code but did not have such authority or if the closure infringed on the appellants' right to assemble, the officer acted beyond her authorized duty. Therefore, we conclude that the jury instructions fairly and accurately reflected the applicable law.

**D.  Sufficiency of the Evidence**

The appellants contend that, because the municipal code did not authorize the officer to close the park or remove the monument, there was insufficient evidence to support the conclusion that the appellants obstructed the officer by hindering the monument's removal. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito,* 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App.1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson,* 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker,* 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–Brito,* 131 Idaho at 385, 957 P.2d at 1101; *Knutson,* 121 Idaho at 104, 822 P.2d at 1001.

At trial, the Boise Municipal Code provision, which addresses the park director's authority to close the park when he finds it reasonably necessary, was admitted into evidence. The park director testified that, given the nature of equipment needed to remove an object as large as the monument, anyone in proximity to the monument would be in danger during the removal process. The park director therefore concluded it was reasonably necessary to close the section of the park surrounding the monument during its removal. The police officer responsible for organizing the police presence on the day of

the monument's removal testified that law enforcement's objectives on that day included maintaining law and order while facilitating the public demonstration in protest of the monument's removal. The organizing officer testified that he worked with the appellants prior to the monument's removal and informed them that obstructing the monument's removal would constitute a crime. The organizing officer also indicated that he set aside a large area to the north of the monument, which was large enough to accommodate several hundred people, for demonstrators to observe and protest the monument's removal. The officer who ordered the appellants to leave the closed section testified that it was her duty to enforce the municipal code, which included the duty to prevent people from entering closed sections of the park. The officer also indicated that, in addition to enforcing the park closure, she had a duty to protect the public's safety by ensuring no one was in the vicinity of the removal equipment. The officer indicated that she allowed the appellants to remain in the closed section until the equipment arrived and then directed the appellants to continue their demonstration in the designated area.

■ From this evidence, the jury could have reasonably concluded that the officer had a lawful duty to enforce the park closure and to protect the appellants' safety by ensuring they were not in the vicinity of the removal equipment. The jury could have also reasonably concluded that, by refusing to obey the officer's order to leave the closed section of the park, the appellants obstructed the officer in the performance of her duty. Accordingly, the state produced sufficient evidence to sustain its burden of proving that the appellants obstructed the officer in the performance of a legal duty beyond a reasonable doubt.

### III.

### CONCLUSION

Regardless of whether city officials violated the Idaho Constitution, the United States Constitution and the Boise Municipal Code by deciding to move the monument to private property without receiving compensation, the appellants were not entitled to obstruct the officer while the city was removing the monument from the public park. Additionally, the jury was correctly instructed regarding the scope of the officer's duty, and the state produced sufficient evidence to prove that the appellants obstructed the officer in the performance of a lawful duty. Therefore, we affirm the district court's orders affirming the appellants' judgments of conviction for resisting and obstructing an officer.

Judge LANSING and Judge GUTIERREZ concur.